IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIK GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| vs. | ) | |
| | ) | Case No. |
| BCC INTERESTS, LLC and | ) | |
| ABRAHAM GANIM, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.     Plaintiff, ERIK GARCIA (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.     Plaintiff is disabled as defined by the ADA.

4.     Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

1

5.     Plaintiff uses a wheelchair for mobility purposes.

6.     Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property within six months after it is accessible ("Advocacy Purposes").

7.     Defendant, BCC INTERESTS, LLC (hereinafter "BCC INTERESTS, LLC"), is a Texas limited liability corporation that transacts business in the State of Texas and within this judicial district.

8.     Defendant, BCC INTERESTS, LLC, may be properly served with process for service via its Registered Agent, to wit:   c/o Law Office of Addie L. Johnson, PLLC, Registered Agent, 7447 Harwin, Suite 201, Houston, TX  77036.

9.     Defendant, BCC INTERESTS, LLC is the owner of the parcel of land which is the subject of this lawsuit and identified by the Harris County Property Appraiser as Account # 0240350180001.

10.     Defendant, ABRAHAM GANIM (hereinafter "ABRAHAM GANIM"), is an individual who transacts business in the State of Texas and within this judicial district.

11.     Defendant, ABRAHAM GANIM, may be properly served with process for service, to wit:   6 Berry Road, Houston, TX  77022.

12.     Defendant, ABRAHAM GANIM is the owner of the parcel of land which is the

2

subject of this lawsuit and identified by the Harris County Property Appraiser as Account # 0240310000004.

## FACTUAL ALLEGATIONS

13.     On or about September 27, 2020, Plaintiff was a customer at "Family Dollar" a business located at 913 S. Broadway Street, La Porte, TX  77571, referenced herein as "Family Dollar". Attached is a receipt documenting Plaintiff's purchase at the Family Dollar.  *See* Exhibit 1.  Also attached is a photograph documenting Plaintiff's visit to the Property as a customer of Family Dollar. *See* Exhibit 2.

14.     On or about October 3, 2020, Plaintiff was a customer at "Painted Pony N Quilts" a business located at 1015 S. Broadway Street, La Porte, TX  77571, referenced herein as "Painted Pony".  Attached is a receipt documenting Plaintiff's purchase at Painted Pony N Quilts.  *See* Exhibit 3.  Also attached is a photograph documenting Plaintiff's visit to Painted Pony N Quilts.  . *See* Exhibit 4.

15.     Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, are the owners or co-owners of the real property and improvements that Family Dollar and Painted Pony are situated upon and that is the subject of this action, referenced herein as the "Property."

16.     Plaintiff lives 11 miles from the Property.

17.     The Property which is the subject of this lawsuit is comprised of two parcels of land, each owned and controlled by Defendants, BCC INTERESTS, LLC (Parcel #0240350180001) and ABRAHAM GANIM (Parcel #0240310000004), however, the Property should be deemed as one "Site" for purposes of the ADA and this lawsuit as the Property is comprised of a single building sharing an accessible route connecting units of one parcel to the units of another parcel.

3

18.     Plaintiff's access to the business(es) located 913 S. Broadway Street, La Porte, TX  77571 and 1015 S. Broadway Street, La Porte, TX  77571, Harris County Property Appraiser's identification numbers 0240350180001 and 024031000004 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, are compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

19.     Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, as property owners, are responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, BCC INTERESTS, LLC and its tenants and Defendant, ABRAHAM GANIM and his tenants allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendants' independent requirement to comply with the ADA for the entire Property it owns and operates, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

20.     Plaintiff has visited the Property at least twice before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

21.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes, but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

22.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

### COUNT I
### VIOLATIONS OF THE ADA AND ADAAG

23.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

24.     Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria,

segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

25.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

26.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

27.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

28.     The Property is a public accommodation and service establishment.

29.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

30.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

31.     The Property must be, but is not, in compliance with the ADA and ADAAG.

32.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

33.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34.     Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by,

7

42 U.S.C. § 12182(b)(2)(A)(iv).

35.    Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

36.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**Barriers to Access on the Parcel Owned by Defendant ABRAHAM GANIM**

(i)     Near Family Dollar, on the access route leading from the accessible parking spaces to the accessible entrances, there is a vertical rise in excess of 1/2 inch along the entire accessible path leading from the accessible parking spaces in violation of Sections 303.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(ii)    As a result of the vertical rise exceeding ½ inch along the entire accessible path leading from the accessible parking spaces, the accessible parking spaces located in front of Family Dollar are not located on an accessible route and therefore violate section 208.3.1 of the 2010 ADAAG standards.  This violation would

make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces.

(iii)     In front of Units 917 and 919, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(iv)     In front of Units 917 and 919, on the access route leading from the accessible parking spaces to the accessible entrances, there is a vertical rise in excess of 1/2 inch along the entire accessible path leading from the accessible parking spaces in violation of Sections 303.2 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access public features of the Property.

(v)      As a result of the vertical rise exceeding ½ inch along the entire accessible path leading from the accessible parking spaces, the accessible parking spaces located in front of Units 917 and 919 are not located on an accessible route and therefore violate section 208.3.1 of the 2010 ADAAG standards.  This violation would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces.

(vi)     There is an insufficient number of accessible parking spaces serving the parcel of land owned and operated by Defendant ABRAHAM GANIM in violation of section 208.2 of the 2010 ADAAG Standards.  There are 114 total parking spaces on the parcel requiring at least five accessible parking spaces, however there are only four accessible parking spaces on the Parcel.  This violation would make it

9

difficult for Plaintiff to locate an accessible parking space if all the others are occupied.

(vii)    In violation of sections 208.2.4 and 502.6 of the 2010 ADAAG Standards, there are no signs identifying any van accessible parking spaces.

**Barriers to Access on the Parcel Owned by Defendant BCC INTERESTS, LLC**

(viii)    Near Unit 1003, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(ix)    Near Unit 1003, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(x)    Near Unit 103, the side flares of the accessible ramp have a surface slope in excess of 1:10 and therefore violate section 406.3 of the 2010 ADAAG Standards. This violation would make it dangerous for Plaintiff to utilize this accessible ramp.

(xi)    Near Unit 1003, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xii)    Near Unit 1003, there is a vertical rise in excess of ¼ inch in the accessible parking space, is not level and therefore in violation of Sections 303.2 and 502.4

10

of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xiii)   Near Unit 1003, due to a failure to enact an adequate policy of maintenance, the access aisle is not adequately marked to discourage parking in the access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the accessible entrances of the Property.

(xiv)   Near Unit 1007, due to an inadequate policy of maintenance, the accessible parking space is not adequately marked so as to define its width and is therefore in violation of Section 502.1 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space and encourage adjacent parking vehicles to park into the space reserved for the disabled.

(xv)   Near Unit 1007, the accessible parking space that does not have a properly marked access aisle as it is not marked to discourage parking in the access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter his vehicle if another individual parks within the access aisle.

(xvi)   There is a policy of placing parking stops in the access aisles at the Property. Specifically, there is a parking stop located in the access aisle of the accessible parking space nearest Unit 1015 which improperly encourages parking in the access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards.  This violation would make it difficult for Plaintiff to leave a vehicle when parked in this accessible parking space.

(xvii)   Near Unit 1015, due to a 2 inch vertical at the sidewalk, there is no access route leading from the accessible parking space to the accessible entrances. As a result, this accessible parking space lacks an accessible route from accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xviii)  Near Unit 1015, there is a sign directly in front of the access aisle of the accessible parking space which says "PP & Q Parking Only" which improperly encourages parking in the access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards.  This violation would make it difficult for Plaintiff to leave a vehicle when parked in this accessible parking space.

(xix)    At the accessible entrance to Unit 1015, the maneuvering clearance of the accessible entrance is not level in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This violation would make it difficult and dangerous for Plaintiff to access this Unit.

(xx)     As detailed in (xix) above, not all entrance doors and doorways comply with section 404 of the 2010 ADAAG standards, this is a violation of Section 206.4 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to access the units of the Property.

(xxi)    Near Unit 1023, the access aisle to the accessible parking space is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

(xxii)  Near Unit 1023, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking space in violation of Section 406.5 of the 2010 ADAAG Standards.  This violation would make it difficult and dangerous for Plaintiff to exit/enter their vehicle.

(xxiii)  Near Unit 1023, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This violation would make it dangerous and difficult for Plaintiff to access the units of the Property.

(xxiv)  Near Unit 1023, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xxv)  Near Unit 1023, due to an inadequate policy of maintenance, the accessible parking space is not adequately marked so as to define its width and is in violation of Section 502.1 of the 2010 ADAAG standards. This violation would make it difficult for Plaintiff to locate an accessible parking space.

(xxvi)  There is an insufficient number of accessible parking spaces serving the parcel of land owned and operated by Defendant BCC INTERESTS, LLC in violation of section 208.2 of the 2010 ADAAG Standards.  There are 168 total parking spaces on the parcel requiring at least six accessible parking spaces, however there are only four accessible parking spaces on the Parcel.  This violation would make it difficult for Plaintiff to locate an accessible parking space if all the others are occupied.

(xxvii)  In violation of sections 208.2.4 and 502.6 of the 2010 ADAAG Standards, there are no signs identifying any van accessible parking spaces.

37.     The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

38.     Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

39.     The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

40.      All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

41.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

42.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, have the financial resources to make the necessary modifications.  According to the Property Appraiser, the Appraised values of the parcels comprising the Property is $1,440,681.00 and $1,385,477.00, respectively.

43.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

44.     Upon information and good faith belief, the Property has been altered since 2010.

45.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG

14

standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

46.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

47.     Plaintiff's requested relief serves the public interest.

48.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM.

49.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, pursuant to 42 U.S.C. §§ 12188 and 12205.

50.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendants, BCC INTERESTS, LLC and ABRAHAM GANIM, to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: November 30, 2020

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com